505 A.2d 106

**ATTORNEY GRIEVANCE COMMISSION OF MARYLAND**

v.

**John Howell SINCLAIR.**

**Misc. Docket (Subtitle BV) No. 20, Sept. Term, 1985.**

Court of Appeals of Maryland.

Feb. 26, 1986.

Melvin Hirshman, Bar Counsel and Glenn M. Grossman, Assistant Bar Counsel, for the Atty. Grievance Com'n.

No appearance for respondent.

Argued before SMITH, ELDRIDGE, COLE, RODOWSKY, COUCH and McAULIFFE, JJ., and CHARLES E. ORTH, Jr., Associate Judge of the Court of Appeals (retired), Specially Assigned.

SMITH, Judge.

In this case we shall disbar an attorney whose neglect resulted in a default judgment in the amount of $100,000 being entered against his client.

Bar Counsel, acting pursuant to the provisions of Maryland Rule BV9, on behalf of the Attorney Grievance Commission, filed a petition with us seeking disciplinary action against John Howell Sinclair, a member of the Bar of this Court since July 7, 1969. The petition alleged violation of Disciplinary Rules 1–102(A)(1), (4), (5) and (6); 6–101(A)(2) and (3); and 7–101(A)(1), (2) and (3).

Pursuant to Rule BV9 b we referred the matter for hearing to a judge of the Seventh Judicial Circuit of Maryland. He has filed a comprehensive report with us in which he sets forth the following findings of fact:

"1. In October of 1981, Rick Griffith retained John Howell Sinclair to represent him in connection with his claim for monies due under a contract. A retainer fee of four hundred fifty dollars ($450.00) was paid by Mr. Griffith to Mr. Sinclair.

"2. Mr. Sinclair filed a Declaration on Mr. Griffith's behalf in the Circuit Court for Prince George's County on October 29, 1981, to wit: *Griffith v. Gates, et al.;* Law No. 89,066.

"3. Karl G. Feissner, as attorney for the Defendants in Law No. 89,066, filed a Motion for Production of Written Instruments on November 10, 1981, prior to filing an Answer. The Honorable James M. Rea granted

the Motion for Production of Written Instruments on November 30, 1981.

"4. Mr. Griffith advised Mr. Sinclair that documents which would assist his case were located at the real estate office and Mr. Griffith's home and office.

"5. Mr. Griffith and Joan F. Katz, Mr. Griffith's wife, telephoned Mr. Sinclair on a regular basis to check the status of the case and offer any information that was necessary. Mr. Sinclair repeatedly assured them that the case was progressing well and that no information was needed.

"6. However, as indicated in the letter dated March 15, 1982, from Mr. Feissner to Mr. Sinclair, there had been no compliance by the Plaintiff with the Court's Order dated November 30, 1981, requesting the production of written instruments. Mr. Sinclair received and read the letter, but no timely response was filed.

"7. On April 27, 1982, the Defendants filed a counterclaim in Law No. 89,006. Mr. Griffith and Ms. Katz discussed the counterclaim with Mr. Sinclair. Mr. Sinclair found the claim 'funny' and indicated to Mr. Griffith and Ms. Katz that it would not present a problem.

"8. Mr. Sinclair failed to file a timely response to the Defendants' counterclaim.

"9. The Defendants moved for default judgment on their counterclaim. On July 9, 1982, judgment by default was entered against Rick Griffith because the Respondent had failed to file a timely response to the counterclaim.

"10. On August 6, 1982, Mr. Sinclair moved to set aside the judgment by default. The judgment by default was stricken on September 29, 1982.

"11. Interrogatories were propounded on Mr. Griffith, care of Mr. Sinclair, on October 8, 1982. The Respondent failed to file timely answers to the Defendants' Interrogatories.

"12. Mr. Sinclair received and read the letters dated October 7, 1982, November 8, 1982, and November 11,

1982, from Mr. Feissner which requested Mr. Sinclair's immediate attention to the outstanding interrogatories. Mr. Feissner did not receive any timely response from Mr. Sinclair.

"13. On November 18, 1982, the Court granted Defendants' Motion to Compel Answers to Interrogatories.

"14. On January 3, 1983, the Court dismissed Plaintiff's Declaration and entered judgment by default in favor of the Defendants on their counterclaim against the Plaintiff because of the Plaintiff's incomplete response to the interrogatories.

"15. Rick Griffith and his wife learned of the default judgment entered on January 3, 1983, either from the Sheriff or when they were notified in writing by the Clerk of the Court. They contacted Mr. Sinclair who advised them that the default judgment was of little consequence.

"16. At no time did Mr. Sinclair indicate to Mr. Griffith that Mr. Griffith may be subject to financial liability on the Defendants' counterclaim.

"17. On February 23, 1983, the Plaintiff's Motion to Strike the Order of January 3, 1983, was denied. On March 16, 1983, the Court denied the Plaintiff's Motion to Revise the Judgment.

"18. On March 21, 1983, Mr. Sinclair filed an Order for Appeal to the Court of Special Appeals from the judgment entered in Law No. 89,066.

"19. On March 22, 1983, after Defendants' *Ex Parte* Proof of Damages, a total judgment of One Hundred Thousand Dollars ($100,000.00) was entered in favor of the Defendants and against the Plaintiff, Rick Griffith.

"20. On May 5, 1983, the Court of Special Appeals dismissed Mr. Griffith's appeal from the judgment in Law No. 89,066 filed on his behalf by Mr. Sinclair because of Mr. Sinclair's failure to file an information report as required by Rule 1023.

"21. Mr. Sinclair never communicated to Mr. Griffith the fact that he had lost the case or that the appeal had

been dismissed. When Mr. Griffith telephoned Mr. Sinclair to question him on the One Hundred Thousand Dollar Judgment assessed against him, Mr. Sinclair advised Mr. Griffith that it was not his fault and that he should consider filing for bankruptcy.

"22. Mr. Griffith's wages were garnished and he had to refinance his home to satisfy the judgment. Mr. Griffith contacted a second attorney and a settlement in the amount of Fifty Thousand Dollars ($50,000.00) was negotiated with the Defendants. This amount was paid by Mr. Griffith to the Defendants."

In finding that Sinclair "did unethically and unprofessionally violate" DR 1–102(A)(1), (4), (5) and (6); 6–101(A)(2) and (3), and 7–101(A)(1), (2) and (3), the judge said:

"Under all of the facts found above, it is this Court's opinion that it can reasonably conclude that Mr. Sinclair intentionally failed to seek the lawful objectives of his client and carry out his contract of employment entered into with Mr. Griffith. Further, since his intentional failure to pursue his client's claim resulted in a judgment of One Hundred Thousand Dollars ($100,000.00) against his client and dismissal of his client's claim, his actions prejudiced not only his client's rights to seek damages but also his client's financial status.

"Neglect is evident. Mr. Sinclair's inattention to the case he accepted and his numerous failures to prepare timely responses resulted in the dismissal of his client's claim. Accordingly, Mr. Sinclair violated Disciplinary Rule 6–101(A)(2) and (3).

"Mr. Sinclair has committed an act of misconduct as defined in Maryland Rule BV1j by violating the aforesaid Disciplinary Rules. By consistently misrepresenting the status of the case to his client, Mr. Sinclair has violated Disciplinary Rule 1–102(A)(4). By his repeated failures to comply with the Maryland Rules of Procedure, by his repeated failures to respond to opposing counsel's requests and by his repeated failures to zealously represent his client's interests, Mr. Sinclair has engaged in a course

of conduct in violation of Disciplinary Rule 1–102(A)(5) and (6)."

Sinclair filed no exceptions to the findings of the trial judge.

We suspended Sinclair for one year in *Attorney Griev. Comm'n v. Sinclair*, 302 Md. 581, 490 A.2d 236 (1985). That case also involved neglect. Bar Counsel notes that the negligence found here occurred between 1981 and 1983 which is the same time period involved in that case. Sinclair was the prior recipient of a reprimand from us for neglect of legal matters entrusted to him. See *Attorney Griev. Comm'n v. Sinclair*, 299 Md. 644, 474 A.2d 1338 (1984). We are advised that Sinclair was privately reprimanded by the Review Board in 1978 for two instances of neglect of a client's legal matters. Under the circumstances we see no alternative to disbarment. *See Md. St. Bar Ass'n v. Phoebus*, 276 Md. 353, 347 A.2d 556 (1975).

IT IS SO ORDERED; RESPONDENT SHALL PAY ALL COSTS AS TAXED BY THE CLERK OF THIS COURT INCLUDING COSTS OF ALL TRANSCRIPTS, PURSUANT TO MARYLAND RULE BV15 c, FOR WHICH SUM JUDGMENT IS ENTERED IN FAVOR OF THE ATTORNEY GRIEVANCE COMMISSION AGAINST JOHN HOWELL SINCLAIR.